UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| AGCS MARINE INSURANCE, CO., | ) | |
|---|---|---|
| | ) | Case No. 1:22-cv-313-CEA-SKL |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AT TRUCKING CORP., | ) | |
| | ) | |
| *Defendant*. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff AGCS Marine Insurance, Co. ("Plaintiff"), as subrogee of Steam Logistics, LLC Steam ("Steam"), filed a motion for default judgment against Defendant AT Trucking Corp. ("Defendant") [Doc. 12]. Plaintiff is proceeding under Federal Rule of Civil Procedure 55(b)(2). The motion was initially held in abeyance to give Plaintiff an opportunity to comply with applicable rules and procedures for first obtaining a Clerk's entry of default pursuant to Federal Rule of Civil Procedure 55(a) [Doc. 16]. Plaintiff sought the required Clerk's entry of default [Doc. 19], and the Clerk entered default against Defendant [Doc. 20]. The motion for default judgment was referred for issuance of a report and recommendation [Doc. 21]. An evidentiary hearing was held December 19, 2023.[1] Defendant did not appear for the hearing or otherwise communicate with the Court. This matter is now ripe.

---

[1] The first evidentiary hearing was cancelled when the required proposed findings of fact and conclusions of law were not filed. After Plaintiff provided the required findings and conclusions, [Doc. 25], the evidentiary hearing was delayed twice until December 19 at Plaintiff's request and notice was issued to Defendant regarding same [Doc. 26, Doc. 27 & Doc. 34]. Defendant has not made any contact or filing with the Court and the Clerk's notices to Defendant have been returned by the post office as undeliverable [*e.g.*, Doc. 24, Doc. 31 & Doc. 32].

Based on the below findings of fact and conclusions of law, I recommend that the Court grant Plaintiff's motion to the extent set forth herein.

I. **DEFAULT JUDGMENT REQUIREMENTS**

Federal Rule of Civil Procedure 55(b)(2) applies if a plaintiff cannot show that its claim is for a sum certain. The granting of a motion for default judgment under Rule 55(b)(2) is "left within the sound discretion of the court;" however, there are procedural and substantive requirements which must be met. *HICA Educ. Loan Corp.*, 2012 WL 6799752, at *1 (quoting *Irby v. Fashion Bug (In re Irby)*, 337 B.R. 293, 294 (Bankr. N.D. Ohio 2005) (applying Fed. R. Bankr. P. 7055, which incorporates Fed. R. Civ. P. 55)).

Procedurally, a plaintiff must show (1) the defendant was properly served with process; (2) the procedural obligations for default judgment under Federal Rule of Civil Procedure 55 have been fulfilled; (3) the defendant was served with notice at least seven days before the hearing on the motion for default judgment, if the plaintiff is seeking default against a defendant who has entered an appearance; (4) the defendant is not an infant or incompetent person; and (5) the defendant is not a member of the armed services who is entitled to protection under the Servicemembers Civil Relief Act. *Id.* at *3-4 (citations omitted). Only if the plaintiff fulfills all these procedural requirements does the court have discretion to enter a default judgment. *Broadcast Music, Inc. v. Marler*, No. 1:09-cv-193, 2009 WL 3785878, at *4 (E.D. Tenn. Nov. 12, 2009) (citing *Virgin Records Am., Inc. v. Bagan*, No. 08-4694, 2009 WL 2170153, at *2 (D.N.J. July 21, 2009)).

As a matter of substance, "courts should exercise their given discretion in favor of denying a motion for default judgment when the plaintiff's complaint fails to state a claim upon which relief can be granted." *HICA Educ. Loan Corp.*, 2012 WL 6799752, at *1 (citing *Bailey v.*

*Harrison*, 107 F.3d 870, 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997) (table)) (other citations omitted). In making this determination, the court should accept all well-pleaded allegations in the complaint as true except for those relating to the amount of damages. *Id.* at *1-2 (citation omitted). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2nd Cir. 1999) (internal quotation marks omitted).

"Where damages are unliquidated a default admits only the defaulting party's liability and the amount of damages must be proved." *Vesligaj,* 331 F. App'x at 355 (quoting *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995)) (alteration adopted). When a plaintiff has moved for entry of default judgment under Rule 55(b)(2), the court may hold a hearing to conduct an accounting, determine the amounts of damages, establish the truth of any allegation by evidence, or investigate other matters as necessary to resolve the claim. *Id.* at (b)(2)(A)-(D).[2] "Proof of damages ordinarily requires an evidentiary hearing in which the defendant may contest the amount, but a hearing is not necessarily required if the moving party submits uncontested, sworn affidavits

---

[2] In contrast, a motion made pursuant to Rule 55(b)(1) is a motion for the clerk's entry of default judgment, and must be "for a sum certain or a sum that can be made certain by computation . . . ." Fed. R. Civ. P. 55(b). "A claim for damages under Rule 55(b)(1) 'is not a sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default.'" *Nat'l Auto Grp., Inc. v. Van Devere, Inc.*, No. 5:20-CV-2543, 2021 WL 1857143, at *2 (N.D. Ohio May 10, 2021) (quoting *Highway Com. Servs., Inc. v. Zitis*, No. 2:07-cv-1252, 2008 WL 4115512, at *2 (S.D. Ohio Aug. 28, 2008). For a default judgment motion under Rule 55(b)(1) to be successful, an affidavit must set forth information to support a finding that there is no doubt as to the amount the defaulted defendant owes the plaintiff. Plaintiff has requested that attorney fees be awarded based on a third of any judgment obtained against Defendant. Thus, Plaintiff's claim, although based on contract, is not entirely liquidated nor fixed. Even if a plaintiff has "requested a precise damages award, a litigant 'cannot satisfy the certainty requirement simply by requesting a specific amount.'" *AGCO Fin., LLC v. Littrell*, 320 F.R.D. 45, 48 (D. Minn. 2017) (quoting 10A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane*, Federal Practice & Procedure* § 2683 (4th ed. Sept. 2016 update)).

sufficient to establish the amount of damages." *Broadcast Music*, 2009 WL 3785878, at *5; *accord*, *Bell v. Zurich Am. Ins. Co.*, 156 F. Supp. 3d 884, 889 (N.D. Ohio 2015) (to determine unliquidated damages a court may make further inquiry "through oral testimony at an evidentiary hearing, or through the submission of affidavits and other materials").

A court's award may include compensatory damages, as well as interest, costs, punitive damages, attorney fees, or other appropriate relief. See, e.g., *id*. at 890-92 (awarding compensatory damages, prejudgment interest, punitive damages, and attorney fees); *Long v. Morgan*, 451 F. Supp. 3d 830, 836-37 (M.D. Tenn. 2020) (finding plaintiffs were entitled to default judgment against the defendant and an award of their unpaid wages, liquidated damages, attorney fees, litigation expenses, and costs). However, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## II. ANALYSIS

### A. Findings of Fact and Conclusions of Law Regarding Jurisdiction, Venue and Procedural Requirements

I find (1) jurisdiction is proper because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00; (2) venue is proper in this Court; and (3) the procedural requirements for entry of a default judgment against Defendant are established as follows:

> 1. Steam is a Tennessee limited liability company with its principal place of business located in Chattanooga, Tennessee [Doc. 1 at Page ID # 2]. Plaintiff is a commercial insurance carrier with its principal place of business located in Chicago, Illinois. Defendant is a Florida Corporation with its principal place of business located in Florida [*id*.].
>
> 2. Steam (as the "Broker") and Defendant (as the "Carrier") entered into a Broker Carrier Agreement on October 29, 2021 (the "Contract") [Doc. 1 at Page ID ## 1 & Doc. 1-1 at Page ID # 6-13; Doc. 38 at Page ID # 154-56].

3. The Contract provides that any dispute under it shall be governed by the laws of the State of Tennessee, and that the state and federal courts sitting in Hamilton County, Tennessee, shall have exclusive jurisdiction over any dispute and shall be the proper venue for any suit [Doc. 1-1 at Page ID # 11].

4. On Steam's behalf, Plaintiff paid a claim under the Contract [Doc. 1]. Plaintiff is the subrogee of Steam, the insured under Plaintiff's policy. [Doc. 37 & Doc. 37-1 at Page ID # 131-52]. Subrogation is "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Blankenship v. Bain*, 5 S.W.3d 647, 650 (Tenn. 1999) (quoting *Castleman Constr. Co. v. Pennington*, 432 S.W.3d 669, 674 (Tenn. 1968)) (internal quotation marks omitted). Subrogation permits "an insurer to 'stand in the shoes' of an insured and assert the rights the insured had against a third party." *Blankenship*, 5 S.W.3d at 650. "The right of recovery of a subrogee is no greater than the right of recovery of the subrogor." *Hudson ex rel. Hudson*, 898 S.W.2d 187, 190 (Tenn. 1995).

5. Plaintiff has established Defendant was served with process/summons on December 27, 2022 [*see* Doc. 10 & Doc.19-1]. As noted above, in conjunction with moving for default judgment, Plaintiff applied for and obtained the Clerk's entry of default [Doc. 19 & Doc. 20].

6. No attorney has entered an appearance on behalf of Defendant. Therefore, it was not necessary for Plaintiff to serve Defendant with the motion for default judgment. *See Slutsky v. Am. Exp. Travel Related Servs. Co. (In re William Cargile Contractor, Inc.)*, 209 B.R. 435, 438 (B.A.P. 6th Cir. 1997) ("Rule 55 unequivocally states that service of the motion is required 'if the party against whom judgment by default is sought has appeared in the action.' Fed. R. Civ. P. 55(b)(2). . . . Having failed to appear in the action, Western was not entitled to notice of the Trustee's motion for default judgment." (other internal citations omitted)).

7. Finally, Defendant is an incorporated entity according to the complaints, and therefore not an infant, incompetent person, or a member of the armed forces. *See Laufer v. Aark Hosp. Holding, LLC*, No. 20-5648, 2021 WL 486902, at *3 (D.N.J. Feb. 10, 2021) (finding no affidavit is necessary to establish that LLC defendant was not a minor, incompetent, or member of the armed services).

5

### B. Findings of Fact and Conclusions of Law Regarding Whether a Claim is Stated

My findings of fact and conclusions of law demonstrating the complaint states a claim are:

8. Under the terms of the Contract, and pursuant to an invoice dated October 31, 2021 ("Invoice") and bill of lading ("Bill of Lading"), Defendant was hired by Steam in October of 2021, to ship to Steam's client 40 pallets of rotolene Natural M-16 resin (the "Cargo") to a facility in Bloomsburg, Pennsylvania for a total Invoice of $49,600.00 [Doc. 1 at Page ID # 3, Doc. 1-3, at Page ID # 19 & Doc. 1-4 at Page ID # 20].

9. On or about November 1, 2021, Defendant shipped the Cargo to the Pennsylvania facility in accordance with the Contract, Bill of Lading, and Invoice terms. Defendant's truck sustained a flat tire in transit during its performance of the Contract. Defendant proceeded to broker a third-party carrier to pick up the Cargo and complete the shipment in breach of Section 7 of the Contract which prohibited Defendant from subcontracting out any portion of the shipment to any third-party absent Steam's written approval. The unapproved third-party carrier was involved in an accident on November 1, 2021, where the trailer overturned, causing significant damage to the Cargo [Doc. 1 at Page ID ## 3-5, 8 & Doc. 38 at Page ID # 155].

10. Defendant contractually agreed to be responsible for the Cargo as well as any equipment utilized to ship the Cargo. Defendant further agreed that it would properly insure the Cargo against any losses or other damage sustained in transit [*id.* at Page ID # 9-10]. Defendant has not met its contractual obligations to Steam [Doc. 1]. In the complaint, Plaintiff claims damages under the Contract in the total amount of $80,100.00, plus reasonable attorney fees and costs [*id.* at Page ID # 5].

11. This matter is one for breach of the Contract and ordinary principles of contract law apply. Under Tennessee law, the elements of a claim for breach of contract are "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Davidson v. Arlington Cmty. Schs. Bd. of Educ.*, 847 F. App'x. 304, 310 (6th Cir. 2021) (quoting *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

12. The complaint alleges each element of a breach of contract claim under the applicable law. The Contract is valid and enforceable, and Defendant breached the Contract by its failure to complete the shipment of the Cargo and indemnify and hold Steam harmless for the Cargo that was declared a total loss after the accident that occurred during Defendant's shipment of the Cargo. Defendant further breached the Contract by utilizing the services of an unauthorized carrier to complete the shipment after Defendant's truck sustained a flat tire. Defendant further breached the Contract by its failure to reimburse Steam for the lost Cargo and towing and storage fees that resulted from the accident.

C. **Findings of Fact and Conclusions of Law Regarding Damages**

My findings of fact and conclusions of law regarding damages are:

13. Pursuant to Section 15 of the Contract, Defendant agreed to indemnify and hold Steam harmless for any loss or damage or other expenses relating to the Cargo [Doc. 1 at Page ID # 4, Doc. 1-1 at Page ID # 10]. "The measure of damages for a breach of contract is the nonbreaching party's expectation interest, measured by '(a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform.'" *White v. Parker*, No. 1:11-CV-294-TRM-CHS, 2018 WL 1279545, at *4 (E.D. Tenn. Feb. 20, 2018) (quoting *BVT Lebanon Shopping Ctr., Ltd. v. Wal-Mart Stores, Inc.*, 48 S.W.3d 132, 136 (Tenn. 2001)), *report and recommendation adopted*, 2018 WL 1278420, (E.D. Tenn. Mar. 12, 2018).

14. Defendant but did not reimburse Steam for the value of the lost Cargo and the towing and recovery expenses incurred because of the accident [Doc. 1 at Page ID # 4]. The total invoice was $49,600 ($47,600 for the Cargo and $2,000 for a "logistics surcharge") [Doc. 1-3]. [Doc. 38 at Page ID # 155]. The logistics surcharge was not paid by Steam or Plaintiff, and the value of the lost Cargo was $47,600 [*id.*]. The damaged trailer and Cargo were towed to a storage facility after the accident and were stored at the facility. Steam incurred towing and storage charges for the lost Cargo in the amount of $32,500 [Doc. 38 at Page ID # 155]. Defendant did not pay the towing or the storage fees, and the Cargo was subsequently declared a total loss [Doc. 1. at Page ID # 4 & Doc. 38 at Page ID # 155]. Thus, Steam suffered damages under the Contract in an amount equal to the

7

Invoice value ($47,600) plus the towing and storage fees ($32,500) for a total amount of $80,100. Plaintiff paid out the claim submitted to it by Steam in the total value of $80,100 (Plaintiff paid Steam $75,100 and Steam paid a deductible of $5,000) [Doc. 37 at Page ID # 131-32 & Doc. 38 at Page ID # 156]. Accordingly, Plaintiff, as the subrogee of Steam, is entitled to a default judgment against Defendant in an amount of $80,100 for the value of the lost Cargo and towering, recovery and storage expenses resulting from the accident.

15. The Contract further provides that the prevailing party in any action to enforce the terms of the Contract shall be entitled to recover its attorney fees and costs [Doc. 1-1 at Page ID # 11 & Doc. 38 at Page ID # 156]. In connection with the default, Plaintiff originally sought a contingency fee of one-third of any judgment (*i.e.*, $26,700) as its reasonable attorney fees [Doc. 25 at Page ID # 111]. The fee arrangement between Plaintiff and its attorney in this matter provides for an attorney fee of the higher of 20% of any recovery or the actual value of time spent on the case, whichever is greater with no payment to the attorney if nothing is recovered [Doc. 39 at Page ID # 169].

16. However, the United States Court of Appeals for the Sixth Circuit has approved the use of the "lodestar" method, by which the Court should multiply the number of hours reasonably spent on the case by a reasonable hourly rate. *Garcia v. Conway*, No. 3:10-cv-01069, 2011 WL 6778258, at *1 (M.D. Tenn. Dec. 23, 2011) (citing *Moore v. Freeman*, 355 F.3d 558, 565-66 (6th Cir. 2004)). The burden of establishing the reasonableness of the fee is on the fee applicant. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The district court may adjust the fee downward where the documentation of hours is inadequate and counsel includes hours that were not "reasonably expended" in the request, such as those that are

8

"excessive, redundant, or otherwise unnecessary . . . ." *Id.* at 433-34.[3] Addressing the impact of a contingent-fee agreement and the application of the lodestar method in a civil rights action, the Supreme Court held:

> The defendant is not, however, required to pay the amount called for in a contingent-fee contract if it is more than a reasonable fee calculated in the usual way. . . . And we have said repeatedly that "[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." The courts may then adjust this lodestar calculation by other factors. We have never suggested that a different approach is to be followed in cases where the prevailing party and his (or her) attorney have executed a contingent-fee agreement. To the contrary, in *Hensley* and in subsequent cases, we have adopted the lodestar approach as the centerpiece of attorney's fee awards. The *Johnson* factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation.

*Blanchard v. Bergeron*, 489 U.S. 87, 93-94 (1989) (citations omitted).

17. In its amended proposed findings [Doc. 41], Plaintiff foregoes any argument that the Court should determine the reasonableness of the attorney's fee based on a contingent-fee agreement with its attorney.

---

[3] In addition to this guidance, the factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) have traditionally been used to further assess the reasonableness of the "lodestar" amount. *See Heriges v. Wilson Cnty, Tenn.*, No. 3:09-cv-0362, 2010 WL 4116719, at *12 (M.D. Tenn. Oct. 19, 2010) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). These factors are "(1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id.* The United States Supreme Court has recognized, however, that many of the factors are "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

During the hearing, Plaintiff confirmed it is no longer seeking an attorney fee recovery in this case based on a contingency agreement with its counsel.

18. Instead, Plaintiff seeks to recover a fee based on the billing rate and hours expended on the litigation claimed by its attorney. I find the lodestar calculation is the most appropriate method for the Court's assessment of reasonable attorney fees in this case. The existence of the contingent-fee agreement in the present case, which provides the attorney will only be paid if funds are recovered, remains an appropriate factor this Court may consider if adjustment of the lodestar calculation is deemed proper. *See Blanchard*, 489 U.S. at 94.

19. This report does not address any contractual obligations of Plaintiff to its attorney; it deals only with what the losing Defendant must pay the Plaintiff, whatever might be the substance of the contract between the Plaintiff and its attorney. The entitlement of a prevailing party to an award of an attorney fee belongs to the prevailing party rather than its attorney and it is generally accepted that statutory awards can coexist with private fee arrangements. *See, e.g.*, *Venegas v. Mitchell*, 495 U.S. 82, 82 (1990).

20. Plaintiff's counsel seeks an hourly rate of $325 for 20.9 hours of attorney time and an hourly rate of $125 for 3.5 hours of staff/paralegal time expended on the litigation [Doc. 39 at Page ID # 168-71 & Doc. 41 at Page ID # 182]. Considering the lack of opposition, the Chattanooga, Tennessee legal market, hourly rates this Court has approved in the past, the type of cases handled by Plaintiff's counsel, and his experience, I **FIND** the claimed hourly rates to be reasonable. Likewise, after thoroughly reviewing the time entries submitted by Plaintiff's counsel [Doc. 40], I **FIND** the expenditure of time on the litigation to be reasonable. Accordingly, I find an award of reasonable attorney fees in the revised amount of $7,295.74 to be proper. [4]

21. In diversity cases, such as this one, "state law governs awards of prejudgment interest." *Jack Henry & Assocs., Inc. v. BSC, Inc.*, 487 F. App'x 246, 260 (6th Cir. 2012). Under Tenn. Code Ann. § 47-14-

---

[4] Records filed by Plaintiff confirm its attorney expended at least 20.9 hours at an hourly rate of $325 (i.e., $6792.50) and 3.5 hours of staff/paralegal's time at an hourly rate of $125 (i.e., $437.50) on the instant litigation, making its request for an award of $7,295.74 reasonable and slightly less than the actual time multiplied by the hours.

10

123, prejudgment interest "may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum." Plaintiff did not seek an award of prejudgment interest in the complaint or during the hearing.

22. Plaintiff is entitled to post-judgment interest at the rate prescribed by 28 U.S.C. § 1961 for the entire award, *i.e.*, $80,100.00 plus $7,295.74 for its attorney fees. *See Jack Henry*, 487 F. App'x at 260 (noting that federal law controls post-judgment interest in diversity cases); *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002) ("Under 28 U.S.C. § 1961, district courts are required to award post-judgment interest.").

Considering the foregoing, I recommend an award of $80,100.00 plus $7,295.74 in attorney fees. I also recommend awarding Plaintiff costs available under 28 U.S.C. § 1920, as determined by the Clerk upon submission by Plaintiff of a timely and properly supported bill of costs if it intends to pursue such costs.

## III. CONCLUSION

For the reasons stated herein, I find Plaintiff is entitled to a default judgment against Defendant for its breach of contract. I therefore **RECOMMEND**[5] that:

(1) Plaintiff's motion for default judgment [Doc. 12] be **GRANTED** and that judgment be entered in favor of Plaintiff;

(2) Plaintiff be **AWARDED** against Defendant

  (a) $87,395.74, which includes damages and reasonable attorney fees,

  (b) post-judgment interest at the rate prescribed by 28 U.S.C. § 1961; and

---

[5] Any objections to this Report and Recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this Report and Recommendation are frivolous, conclusive, and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

  (c) costs allowed under 28 U.S.C. § 1920, to be determined by the Clerk upon submission of a timely, properly submitted bill of costs.

Although the prior mailings to Defendant by the Clerk have been returned as "Undeliverable/Return to Sender/Unable to Forward," the Clerk is **DIRECTED** to mail Defendant a copy of this Report and Recommendation.

  ENTER:

            s/ *Susan K. Lee*
            SUSAN K. LEE
            UNITED STATES MAGISTRATE JUDGE